UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| SANDRA ANDERSON, Personal Representative of the Estate of BETTY NEWELL; and SANDRA ANDERSON,<br><br>                    Plaintiffs,<br>    v.<br><br>BRYAN CURTRIGHT; JOHN DOES 1-6, as individuals; and COLUMBIA COUNTY, an Oregon municipality,<br><br>                    Defendant.<br>_____ | Case No. 3:18-cv-2058-AC<br><br>OPINION AND ORDER |

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiff Sandra Anderson, on her own behalf and as Personal Representative of the Estate of Betty Newell ("Plaintiff"), filed this action under 42 U.S.C. § 1983 ("Section 1983"). Anderson alleges defendants Columbia County (the "County"), Bryan Cutright ("Cutright"), and John Does 1-6 violated the right to be free from unlawful seizure and confinement protected by the Fourth

Amendment when Cutright, his supervisor, and officers of the Columbia County Sheriffs' Office (the "Officers"), arrested her and seized her mother, Betty Newell ("Newell"), without probable cause. Plaintiff also asserts a wrongful death claim under OR. REV. STAT. 30.020 for Newell's death caused by the trauma of witnessing Anderson's arrest and her own involuntary transport to a hospital. Cutright and John Doe 1, identified as Cutright's supervisor (collectively "Defendants"), move to dismiss the complaint for failure to state a viable claim against them.

The court finds Plaintiff adequately alleged a causal relationship between Cutright, the alleged unconstitutional conduct, and Newell's death, but no such relationship with regard to John Doe 1. Accordingly, Defendants' motion to dismiss is[1] be denied with regard to Cutright and granted with regard to John Doe 1.[2]

*Background*

In late 2016, Plaintiff retired from her position as a medical assistant to provide full-time in-home care for Newell. (Compl., ECF No. 1, ¶¶ 10, 13.) Plaintiff's sister-in-law, Nettie Anderson ("Nettie"), a licensed caregiver, assisted Plaintiff in caring for Newell. (Compl., ¶ 20.) Plaintiff communicated and cooperated with Anna Crawford, the hospice worker assigned to Newell ("Crawford"), to determine the appropriate care for Newell, specifically with regard to Newell's worsening bedsores. (Compl. ¶ 14.)

In February 2017, a substitute hospice worker observed Newell's advanced bed sores and reported Plaintiff to the Oregon Department of Human Services (the "Department") for suspected

---

[1] The parties have consented to jurisdiction by magistrate judge in accordance with 28 U.S.C. § 636(c)(1).

[2] The court finds this motion appropriate for disposition without oral argument, pursuant to LR 7-1(d)(1).

PAGE 2 - OPINION AND ORDER

abuse and neglect. (Compl. ¶¶ 14, 16.) On February 22, 2017, Cutright, a Department employee and former law enforcement officer with the Columbia County Sheriffs' Office, visited Newell's residence to follow up on the report. (Compl. ¶¶ 6, 17.) Cutright observed Newell's bedsores, briefly reviewed Newell's medical chart, and began taking pictures of Newell. (Compl. ¶ 18.) When Cutright denied Plaintiff's request for copies of the pictures, Plaintiff felt the visit was "becoming adversarial" and asked Cutright to leave. (Compl. ¶ 18.) After a somewhat heated exchange with Plaintiff's husband about Cutright's service in the United States Marine Corp, Cutright left the Newell residence threatening to "have [Nettie's] license" and stating "I'm coming back with the authorities." (Compl. ¶¶ 19, 20.)

Cutright contacted Crawford, and accused Plaintiff and Nettie of elder abuse based on Newell's bedsores. (Compl. ¶ 22.) Cutright agreed to "postpone any further action" after Crawford advised Cutright of a treatment plan agreed upon by Plaintiff and Crawford. (Compl. ¶¶ 22, 23.) However, Cutright returned to the Newell residence on February 23, 2017, with his supervisor "Susan," and the Officers. The Officers immediately placed Plaintiff, her husband, and Nettie in handcuffs and interrogated them "in a threatening and intimidating manner." (Compl. ¶ 24.) The Officer eventually arrested Plaintiff and Nettie, and transported them to Columbia County Jail. (Compl. ¶ 28.) Newell witnessed the Officers' actions, was visibly upset, and did not speak or eat again. (Compl. ¶ 29.)

Several of the Officers held Newell while "Susan" took pictures of Newell's bedsores. (Compl. ¶ 27.) The Officers then removed Newell from her residence and transported her to St. Johns Medical Center by ambulance. (Compl. ¶ 30.) Newell was subsequently transferred to a hospice facility, where she passed away on February 28, 2017. (Compl. ¶ 30.) As of the filing of

this lawsuit, neither Plaintiff nor Nettie had been prosecuted for elder abuse or neglect. (Compl. ¶ 33.)

Plaintiff claims Cutright, John Doe 1 ( presumed to be "Susan,") and John Does 2-6 (identified only as the "Officers"), arrested and seized her without probable cause in violation of the Fourth Amendment. Plaintiff also alleges the conduct of Cutright and John Does 1-6, specifically "the unconstitutional arrests of Plaintiff [and Nettie], and the unlawful seizure of [] Newell's person against her will" which "were unjustified and unsupported by law" were the cause of Newell's death. Defendants move to dismiss the claims against them arguing they did not personally participate in the seizure or arrest of Plaintiff, Nettie, or Newell, and can not be held liable for such actions.

*Legal Standard*

A well-pleaded complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2) (2019). A federal claimant is not required to detail all factual allegations; however, the complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. While the court must assume all facts alleged in a complaint are true and view them in a light most favorable to the nonmoving party, it need not accept as true any legal conclusion set forth in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, a plaintiff must set forth a plausible claim for relief – a possible claim for relief will not do. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969

(9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678); *Sheppard v. David Evans and Assoc.*, No. 11-35164, 2012 WL 3983909, at *4 (9th Cir. Sept. 12, 2012) (quoting *Iqbal*, 556 U.S. at 679) ("The Supreme Court has emphasized that analyzing the sufficiency of a complaint's allegations is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'")

*Discussion*

I. Section 1983 Claims

Plaintiffs' First and Second Claims for Relief allege claims under Section 1983, which provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

To state a Section 1983 claim, "a plaintiff must allege that (1) the defendant was acting under color of state law at the time the acts complained of were committed, and that (2) the defendant deprived plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Briley v. California*, 564 F. 2d 849, 853 (9th Cir. 1977).

Defendants concede they were acting under color of state law at the time of the alleged conduct. Defendants object only to Plaintiffs' failure to allege Defendants arrested Plaintiff or seized Newell, or otherwise deprived Plaintiff of her constitutional rights under the Fourth Amendment. Plaintiff contends "state officials who specifically direct law enforcement to arrest and transfer innocent persons based on false allegations" are not immune from liability under Section 1983.

(Pltf.'s Resp. to Defs.' Bryan Curtight and John Doe #1's Mot. to Dismiss, ECF No. 13, at 3.) With the exception of citations establishing the motion to dismiss standard, the only case cited by either party is *Avalos v. Baca*, 596 F.3d 583 (9th Cir. 2010), which is found in Defendants' reply brief. The relevant discussion in *Avalos* addresses the requirements to prove a *Monell* claim, not a claim against the individual actor, under Section 1983. As a result, *Avalos* is not helpful here.

Government officials may not be held responsible under the theories of *respondeat superior* or vicarious liability for the unconstitutional acts of their subordinates. *Iqbal*, 556 U.S. at 676. Rather, a Section 1983 defendant "is only liable for his or her own misconduct." *Id*. at 677. Such misconduct is not limited to the affirmative acts or omissions that result in the constitutional violation. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). In other words, "personal participation is not the only predicate for section 1983 liability." *Id*. The statute makes clear a government actor who 'causes' any citizen to be subjected to a constitutional deprivation is liable. 42 U.S.C. § 1983 (2019). "The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Id*. at 743-44. *See also Harris v. Roderick*, 126 F.3d 1189, 1198 (9th Cir. 1997)("It was reasonably foreseeable that the alleged falsehoods would lead to the unconstitutional shooting, as well as the unlawful detention and wrongful prosecution of Harris. The allegations in Harris's complaint are sufficient to plead the requisite causal relationship.").

Plaintiff's failure to allege Defendants personally participated in the arrest and seizure does not, in and of itself, defeat Plaintiff's Section 1983 claims against Defendants. Plaintiff alleges Cutright accused her of elder abuse, told Nettie he would have her license, and promised to return

with authorities. Cutright kept his promise, arriving at Newell's residence with the Officers the very next morning. The Officers immediately placed Plaintiff, her husband, and Nettie in handcuffs and, after refusing to hear Plaintiff's explanations, arrested Plaintiff and transported Newell to the hospital. Viewing these allegations in a light most favorable to Plaintiff, Plaintiff has adequately alleged facts establishing Cutright, through his reports of elder abuse, induced the Officers to accompany him to Newell's residence, and was pivotal in the Officers' decision to arrest Plaintiff and seize Newell in the absence of an adequate investigation or the requisite probable cause. Moreover, Cutright should reasonably have known his communications with the Officers would likely result in the constitutional violations suffered by Plaintiff. Plaintiff has stated viable Section 1983 claims against Cutright.

Assuming John Doe 1 is Susan, Cutright's supervisor, Plaintiff has failed to allege she was instrumental in the alleged constitutional violations. Plaintiff alleges only that Susan was present on the morning of February 23, 2017, and took pictures of Newell's bedsores before she was transported to the hospital. There are no allegations Susan accused Plaintiff of elder abuse, had any conversations with the Officers before the arrest, or considered arrest or seizure to be proper under the circumstances. To the contrary, Susan allegedly agreed with Plaintiff's statement: "This has got way out of hand. This could have been handled differently." (Compl. ¶ 25.) Plaintiff fails to allege John Doe 1 "caused" or was otherwise responsible for the arrest and seizure. Consequently, John Doe 1 is entitled to dismissal of Plaintiff's First and Second Claims for Relief under Section 1983.

II. Wrongful Death Claim

In her Third Claim for Relief, Plaintiff asserts a wrongful death claim under OR. REV. STAT. 30.020 against Defendants. Plaintiff alleges the wrongful arrests and seizures caused Newell's death.

PAGE 7 - OPINION AND ORDER

Defendants argue Plaintiff's failure to allege personal participation in the arrest of Plaintiff and Nettie, and the seizure of Newell defeats Plaintiff's wrongful death claim.

Under OR. REV. STAT. 30.020, a personal representative may pursue an action on a decedent's behalf "[w]hen the wrongful death of a person is caused by the wrongful act or omission of another" and "the decedent might have maintained and action, had the decedent lived, against the wrongdoer for an injury done by the same act or omission." Defendants argue their actions, which did not include the actual arrest and seizure, did not "cause" Newell's death, putting at issue the causation standard applicable to wrongful death claims under Oregon law.

> The Oregon Supreme Court has interpreted the requirement under ORS 30.020 that a defendant's act or omission cause the decedent's death to encompass both the reasonable probability standard of causation, which applies in the majority of cases, as well as the substantial factor standard, which applies where two causes, each independently sufficient to cause the identical result, concurrently bring about an event.

*Lum v. City of Grants Pass*, Civil No. 09-3075-CL, 2011 WL 915385, at *6 (D. Or. Jan. 6, 2011)(citing *Joshi v. Providence Health Sys. of Oregon Corp.*, 342 Or. 152, 157-64 (2006)). Plaintiff alleges a single cause was responsible for Newell's death – the wrongful actions of Defendants and the Officers. Consequently, the reasonable probability standard of causation applies. In describing the reasonable probability standard, the *Joshi* court stated:

> It is well established that the causal connection between defendant's acts or omissions and the plaintiff's injuries must not be left to surmise or conjecture. The proof of the material issue must have the quality of reasonable probability, and a mere possibility that the alleged negligence of the defendant was the proximate cause of plaintiff's injuries is not sufficient.

*Joshi*, 342 Or. at 159 (quoting *Sims v. Dixon*, 224 Or. 45, 48 (1960)).

With regard to Cutright, the court has found Plaintiff adequately alleges a causal connection

between Curtight's report of elder abuse and promised to return with authorities, and the Officers' interrogation and arrest of Plaintiff and Nettie, as well as Newell's involuntary transport to the hospital. Newell died a few days later, allegedly as a result of the Officers' actions. Viewing these allegations in a light most favorable to Plaintiff, it is reasonably probable the Officers would not have engaged in the conduct which alleged resulted in Newell's death in the absence of Cutright's report of elder abuse. Consequently, Plaintiff has adequately alleged the requisite causation between Cutright's actions and Newell's death.

Plaintiff s' allegations against Susan, however, are only that she was present during the interrogation, arrests, and seizure, and took pictures of Newell's bedsores. Plaintiff does not allege Susan interacted with the Officers prior to their arrival at the Newell residence or in any way encouraged the allegedly wrongful arrest or seizure.[3] As currently alleged, it is just as likely Cutright and the Officers would have engaged in the same conduct in the absence of Susan's presence at the scene. Accordingly, it is not reasonably probable Susan's alleged actions were causally related to Newell's death. Plaintiff's wrongful death claim against Susan, or John Doe 1, is dismissed.

*Conclusion*

Defendants' motion (ECF No. 10) motion to dismiss is DENIED with regard to Cutright and GRANTED with regard to John Doe 1.

DATED this 11th day of June, 2019.

    /s/ John V. Acosta
    JOHN V. ACOSTA
    United States Magistrate Judge

---

[3] Plaintiff does not allege or argue Susan had a duty to prevent the wrongful arrest or seizure and was negligent in failing to act.

PAGE 9 - OPINION AND ORDER